Case number 20-1265 Columbia Insurance Company versus Christopher Camille Waymer. Ms. Barnes? Yes, your honor. Good afternoon. Are you out there? I'm out here. Can you all hear me? Yes, ma'am. Good to have you with us. Thank you very much. I'm Kathleen Barnes. I'm appearing today on behalf of the appellants Mr. and Ms. Reynolds and also appearing for appellant Mr. Waymer is Mr. Utsi and we have agreed to split some of our initial argument time. I'll be arguing for the first 12 minutes and Mr. Utsi will take three minutes after that. This appeal presents disputed issues for a jury to decide. I might say that repeatedly today. There's an issue for a jury to decide because pretty much every issue we're going to discuss is one as to which there is conflicting evidence. When it granted summary judgment, the district court misapplied the summary judgment standard by failing to view the evidence in a light most favorable to the appellants and then ruling on bad faith and negligence as a matter of law. What we're asking this court to do is to properly view the evidence and inferences in a light most favorable to the appellants and find that there is conflicting evidence as to whether Columbia Insurance Company lacked a reasonable basis to reject both the January 23rd and the May 21st settlement demands. Because of that conflicting evidence, summary judgment was improper and this court should reverse. I'm going to start with the January... All this depended on the headlines that were arbitrarily fixed by the plaintiff's lawyers demand letters, correct? I disagree that they were arbitrary. The plaintiffs did set the deadlines. They weren't fixed by the court and they weren't agreed to by the other side. You all just wrote a demand letter or more than one and said if you don't answer within 10 days or whatever the date was, then that's the end of it, right? Well, they said if you don't answer within that time frame, then we're not going to accept the policy limits. But that's, I mean, a time demand is allowed under Tiger River and all of its progeny in South Carolina. I'm not saying you can't do it this way, but when you do it this way, you're just inviting the other lawyer to plant his feet too. You're stirring up a disagreement among counsel rather than really trying to get something settled. Your Honor, I disagree with that. We've all been lawyers too. A lot of us have been through this. The first time you wrote something to them, you gave them a deadline. You pay us the million dollars by such and such a date or it's all over. We're going to get more than the policy limit. Well, they did set a deadline, but they set a deadline for a reason in this case as to when their clients at what point would have been willing to accept that and for various reasons at what point they wouldn't have been because, I mean, it's clearly undisputed at this point that a million dollars is nowhere near enough to cover their damages. There's a certain time frame at which they were willing to accept that and a certain time frame at which they said, no, that's no longer enough for us to settle this case. I don't think there's anything inherently wrong with that proposition. A time demand inherently always says after a certain point, we're not going to take this much money. Here, there were valid reasons for why they sent the letter when they did and why they set the time frame for responding to it when they did. So you've got a situation where you've got a very seasoned trial judge here looking at these kind of cases, very familiar with these kind of cases, and I'm just thinking in terms of where is this judge going in terms, particularly this first offer, that if it does beat the so-called obvious standard that everybody would know this case, maybe they just knew it was in excess of a million, why not you do it? Didn't have the time, not all of them, didn't know the full extent of the cost, which many times that's where you can at least gauge damages based upon the cost of the medical damages. I don't know if the 62,000 was known at the time of the helicopter, but that's a helicopter ride, not really medical treatment, but it does indicate the seriousness of it. I mean, it's a lot of factors here. What I want, if you can answer in terms of our standard of review, typically in a summary judgment, we're looking for issues of fact, but this is a kind of an interesting situation because it really turns on whether as a matter of law, can the court say that there is a reasonable basis for rejecting both settlements? And it looks to me as though that's what the judge did. The judge says, as a matter of law, there is a reason. And the reason is, as Judge King pointed out, you gave 10 days. And this is before you had the medical records, even though I guess they could have got them, I don't know how to get them in 10 days with the process, but 10 days is a bite of shore. And, you know, so respond to that. I think that's kind of where I'm looking at trying to figure out where was the trial judge going on in ruling in this matter? And it seems like it wasn't 10 days, but it's also was the fact that they needed a little time to investigate. You got to pay out a million dollars, even though, as you say, it looks like it's pretty obvious, but it's a million dollars. And 10 days is might a short time to say, you know, give me a billion or, or, or, or, you know, we're not going to settle the case. How do you respond? Well, Your Honor, starting with the 10 days, part of it that you asked about, and I think as well, Judge Gergel focused on, that's the incorrect time for when you looking at their conduct. They have a duty to begin investigating this as soon as the claim comes to them. They ordered their independent adjuster on December the 19th to go ahead and ask for medical authorizations and start getting the medical records in this case. So their time for starting to investigate. Before you throw me off on that, I want to make sure I understand that and what is the South Carolina law on it. You said they have a duty to investigate from day one, probably so. But the question is from the date of the offer, how long did they have in order to respond to this offer? I mean, if you follow what you're saying, you could come in with this offer the day before and give them 24 hours or 10 minutes if they've had four months to investigate it. And I'm not sure I'm following that logic at all. Well, I'm not saying that simply because they have a duty to investigate from the beginning of a claim means that you can come in and make a time demand that will be deemed reasonable at any time. The point was simply that their duty to start investigating and getting these medical records doesn't start the day that they get the time demand. They were supposed to have been doing this all along. And in fact, the evidence here shows they turned down an offer of medical authorizations before this demand was confusing on this. I thought that even the Reynolds's lawyer was only getting partial records like the day before that 10 day thing expired. It seemed that no matter how soon you started, right, you were going to have to wait until after the Reynolds were out of the hospital and then it was going to take 10 to 20 to 30 days. And even their own lawyer hadn't gotten complete records by the time this offer expired. Is that not right? He had not gotten complete records by then, but he had also, I think, I don't think he had asked for all of the full records by then. But that, I mean, that, that point, starting the analysis at that point assumes that they needed and as a matter of law were allowed or required to have those before they could ever respond to a demand. And that is inherently a jury issue. It's going to differ in every single case, whether those medical records are necessary. Really just a very basic sort of documentation of these injuries. It's not like they were looking for, you know, we want to go back in time in your medical records to see if you had pre-existing conditions. We just want to know how much did it cost when you went to the hospital because of this accident? And you think there could be, you could, um, assuming that there was no reasonable opportunity to get that substantiation for the cost of the medical care from the accident, it could still be faith to refuse to settle for a million dollars? Yes, your honor. I believe it could still be, it was not bad faith as a matter of law. Again, this is summary judgment. So all we're saying here is that there's conflicting evidence that a reasonable jury could find. It wasn't, wasn't, um, reasonable. A jury could find it was, um, it's just conflicting evidence. Our, our biggest issue with the district court is that he decided these as a matter of law, um, instead of, well, but it's a hypothetical. If the facts are undisputed, that there is no way that, um, this insurance company could have gotten substantiation in the form of hospital records just for the treatment of these injuries, the injuries caused by the accident. Um, then it would still be a question for the jury, whether it was bad faith for the insurance company not to pay out a million dollars without any substantiation of these people's injuries or the extent of the cost of treating those injuries. Yes, your honor. If I understand correctly, if you put, put the fact in this case that there was no way they could have gotten the MUSC medical records before then, that's still a jury question, whether they had enough information otherwise to conclude that the value of the claims is going to exceed the policy limits. Okay. Um, but judge when, I'm not sure if I answered your question, um, about, you know, this, I think sort of being factual versus ruling as a matter of law, but I think I somewhat did in answering judge Harris's questions, but if I haven't, please let me know. Cause I'd like to, to be sure I answer your concern. Well, I'm just, I think the posture of it, you know, it being that the judge needed only found that as a matter of law, there is a basis upon which they could have made this decision, uh, to not doing it as opposed to the usual summary judgment, where you simply look for any disputed, uh, fact, um, and, or you try to determine, and maybe, maybe here in your point would be, is that it is disputed as to whether or not this is obvious or that, uh, and maybe a reasonable jury could find that there's no way you would not have done this under the facts of this case. So maybe that's where you're going, but I, I, I think the summary judgment aspect of it has an important role here, but I also think it's nuanced more than just the go find a disputed fact, but if you can find one, but if, but if they, if, if outside of that fact, there's a reason they could have done it, it seems like to me, uh, they prevail against the bad faith in this instance. Well, your honor, that, that, that point of, uh, summary judgment in terms of getting to this medical record issue. And part of our problem is we felt like judge just sort of skipped over some issues that you would have to decide before you got to whether or not, you know, they needed the medical records or they didn't need the medical records, um, in this situation. So, I mean, in deciding it as a matter of law, he really decided three or four disputed a factual issues, you know, whether they could or should have evaluated the claims without this, this is not a situation where they said, well, we don't think it's worth a million dollars, but we'll pay you, you know, 200,000. Um, they refuse to, to make any type of, uh, settlement offer whatsoever here. Um, and I see, well, but I thought that was their whole point that they didn't, they didn't know how much to offer because they hadn't gotten the medical records. And I did think that the district court did address this. Um, and now I'm working from memory, but I thought the, uh, the district court said, well, yeah, there is some evidence. I mean, they, they built up the reserves to a million dollars. It was obviously a horrific accident. People had to be airlifted to a hospital. It was a substantial hospital stay. So yeah, there was definitely some evidence to put the insurance company on notice that this was likely to be a very expensive payout, but I thought the district court said still. And I agree with Judge Wynn as a matter of law and insurance company is entitled to get some substantiation. At least if it acts diligently, it's entitled to get some substantiation of the claims before it Um, I'm in excess of my initial time. May I answer your question? Go ahead. Um, I, I think, uh, you get to a very good point, which is he, he did say, yeah, there was some indication that it was going to exceed the policy limits. And at, at that point they should have been on hyper alert that they needed to act in a manner that served their duties to their insured in this situation. If there were all these indicators that it was going to exceed a million dollars and all they said was, well, we're pretty sure it's going to exceed a million dollars, but we want these substantiating documents. That's a jury issue, whether it was reasonable to require that specific substantiation. All they've said here is we wanted these specific records. It wasn't, we don't know if it's going to exceed a million dollars. We need to finish our liability evaluation. None of these other things. It was, we want these things to document our file. And at that point, when they are on alert, as judge Gergel said, that this claim is likely to exceed a million dollars, is it worth it for them to say, we want to document our file to the risk that our insurance going to end up with an excess judgment. So thank you for, for letting me speak and I'll give Mr. UTC over to the argument and talk again and reply. Thank you, Mr. UTC. You're out there. Yes, sir. Good afternoon. And may it please the court. I represent the insured in this case, Christopher Wehmer. And in the limited time I have reserved to speak, I'd like to address one of several aspects of this case that creates an issue, in fact, the jury to resolve. And this is a different one than the panel has been discussing with Ms. Barnes. That is whether Columbia Insurance Company had a reasonable basis upon which to reject the May 21, 2014 settlement proposal from Mr. Tinsley. I'm sorry, before you get into that, may I ask you a question about the relationship between these two settlements? Just assuming hypothetically, if I agreed with the district court that as on the first settlement, if I agreed that on the first settlement, as a matter of law, no reasonable jury could find that the refusal of the January offer was in bad faith. If that were right, then I wouldn't have to reach the second settlement, right? Because there would be, because now we're hypothesizing that in this high-low litigation, no reasonable jury could come back with a finding of bad faith. So the maximum payout would be the $1 million, which is what was paid out. So there'd be no injury or damage from rejecting that settlement, right? If the judge was right about the first settlement, then there's no injury from rejecting the second settlement. Isn't that right? I don't think that's entirely correct, Judge Harrison. The reason is I don't think it's appropriate to dissect this entire sequence of events into individual pieces in that fashion. You have to contextualize each step. When you consider... No, but I'm saying even if, even if they rejected the second settlement offer in bad faith, there'd be no damage from that. I don't know what you could recover for that because we're now, again, just by hypothesis, assuming that the jury in that high-low litigation had to come back with a finding that there was no bad faith. I think what you're getting to there, is there a causation issue that would tie the... Right, right. There's no damages or cause from the bad faith refusal to take that second settlement. Again, I think you have to go back to the proposition with which we obviously disagree. Of course, and I'm only... This is just hypothetical. I'm really just trying to figure out how this fits together. If that rejection of the initial demand was in good faith, hypothetically, then you come not immediately from there to the mail letter that I would like to discuss, but instead you have the interim offer, which was conditioned on not only a release of my client, protection for my client, Mr. Wehmer, but also a release of Columbia. It's that offer from Columbia that prompted the response from Mr. Tinsley in the mail letter because the important distinction between Columbia's proposal, where they wanted to have their own protection in addition to the protection insured, is what led to the mail letter in which Mr. Tinsley said, wait a minute, really all you have to give up is this insistence on being protected Columbia Insurance Company in order to protect your insured. That's why the context shows that that rejection of the mail letter is there's evidence of bad faith there. Unfortunately, because of our time constraints, I was only able to reserve three minutes, and so I see that my time has expired. Thank you very much, Mr. Yudsey. Mr. Brown, are you out there? Yes, your honor. May it please the court. Thank you. The panel has been asking questions that I think are exactly the right questions. The first issue on the January offer is could a reasonable jury find that CIC, which is Columbia, had no reasonable basis to decline the January offer? As a matter of law, an insurance company has a right and a duty, actually, to investigate and get substantiating corroborating records. We have cited in our briefing numerous decisions from various circuit courts that say that. One case I bring to your attention, especially, it's a middle district of Florida, but it's very interesting in the way that they discuss it, the Noonan case. In that case, very similar facts. The reserves, in fact, were raised at the outset, almost a couple of days after the accident. This was an excess policy carrier. It's put on notice of the accident. They raised their reserves to limits. The court had no problem saying, no, you don't have to do this time-limited demand without any substantiating records. The court noted that this Tiger River bad faith duty to reasonably settle is a shield for insurers. It is not a sword for claimant's lawyers. The claimant cannot, by using this technique of a time-limited demand, take away the insurance company's rights to justify and substantiate the claim that it's supposed to pay. This would, a contrary rule would just encourage, it would encourage fraud, it would encourage sending very short demands, as Judge Wynn was pointing out, with only partial information, and then you get to go to a jury in accordance with what Ms. Barnes was saying, and you get to argue, well, this is enough information. Well, that's enough information. And under their may-offer scenario that the plaintiff lawyers engaged in, you would then be faced with, I could see an insurance company be faced with several staggered demands. You have to agree to a high of $5 million, and then that's a question for the jury. You have to agree to a high of $4 million. That's going to be a question for the jury. I mean, this would go on and on. And so, for the January offer, the judge, district judge, made the very unremarkable ruling, which is supported by numerous circuit courts, which we cite in our brief, that the insurance company is entitled to get substantiating records and corroborating records before it pays, certainly, a million dollars out. And the only thing they had at the time was the air ambulance records and bills, and that was it. The argument is made by counsel that, well, you got to look at the first date of when they first started investigating and go by that, and somehow, it's somehow bad faith anyway. And I think the panel has asked two excellent questions, which I had written down already to talk about. One is, there's no causation here. Even if you were going to complain about Mr. Ray, assuming it's all true that he didn't, you know, that on the phone, a paralegal for the plaintiff's lawyer said, please accept medical authorizations, and he said, I don't need them. Assume that's true. It didn't matter because that was on January 9th. The rentals were still in the hospital. No one could get the records. Let's explore, at least, in terms of the first offer. Yes. And it just seems, I mean, it's hard not to think about the days when I practiced law, and if I knew that a tractor trailer hit a car with two people in it, and it totaled that car, and you had to take a helicopter and take the husband and wife to a medical facility that would cost over $60,000 to send that, and they each stayed there in excess of, I guess, three weeks or more, I would pretty much bet anybody that case was worth a million dollars. And I think Mr. Ray thought that, too, when he was looking at this, saying, this is a million dollars. We might want to just pay this and take a walk. And so, I mean, there are cases in South Carolina when we're looking at the South Carolina law here, and, you know, maybe cases in which they've been deaf, but, you know, the case in which sometimes the damages in a case of this sort can be even greater than a deaf case because of ongoing economic situation where you're living with certain conditions and medical bills are going to last. I mean, it wouldn't have taken much if you knew that your liability could be much more than a million. In other words, if you were, in fact, the insurer here, rather than the insurer with a million, and you were looking at this thing, and you knew you could end up with a verdict far incest of a million, if I was in a position of the insurance company, and I'm just thinking a reasonable jury could determine that, you know, anybody there would go and they would do some serious digging. You might drop some other stuff and say, you know, can we just pay this million and get this over? Or take a risk and, you know, just kick it to the can and say, well, we're not worried about it because, you know, we're not going to be found with bad faith. I mean, how is that not relevant in this case that when we're looking at a question that a jury can find, even when you are looking at the prospect that a reasonable jury could or could not find that you didn't have a reason, but when you're looking at that reason, you got to look at the facts and say, wait a minute, no reasonable insurance company would do this, not with all this and really not come back and talk to you immediately about this million dollars, whether you're going to pay it or not. You will begin to make some serious inquiry. You see where I'm going with this? I see where you're going, Judge. Let me respond this way. The law does not require anyone to pay money based on speculation. Okay. Yeah, but I want to make sure we cover that point. There's no South Carolina authority that I've seen that says you are entitled to some request. I mean, there's nothing to say that and that's what we're dealing with. And you got to make a reasonable determination. It's a conflict in a sense because you got a million dollars insurance company and then you got a guy you actually insured over there shaking in his boots saying, whoa, this could be a whole lot more than a million dollars. So, you know, the incentive is sort of skewed here, but we've got to look at the reality. Yeah, you would like to have had $600,000 in medical bills and that sort of stuff, but I'm just telling you, not many people are going to look at a tractor trailer hitting a car like this and this kind of damaging these people with these injuries. And I say, oh, even in South Carolina, this is worth a million. Judge, I think you would be requiring, first of all, I can't cite a South Carolina case that says can't get substantiating records. I can cite some cases. No, no, no, no, no, no, Mr. Turner, what I said, I didn't say you can't get them. I said it wasn't saying you were entitled to get those before you take some action. That's what I'm saying. And the cases cited by the district court here are all out of circuit cases. Well, your honor, you're entitled as a carrier to pay the million dollars. There are South Carolina cases that say you have a right of investigation. You do not have to guess that the hospital, all the hospitalization and all the time they spent in there was in fact. And I'm not, I'm going to turn it loose because I think we are sort of getting to a point where we're understanding whether I'm not disagreeing with a thing you just said, but what I am saying to you is that there are cases in South Carolina. It is obvious or it approaches a situation where a reasonable jury could determine this. You got an expert who testifies to you that it is a full-blown conclusion. This thing is over, over a million dollars. And when you look at all these facts that are put there, and I don't know where the expert, I mean, did you go to other lawyers who have those cases around? I'm pretty sure they would look at this. I don't think you could find one who felt like they knew what they were doing. This case wasn't worth a million dollars within a few days of this thing happening, understanding the nature of it. So it's, I mean, it's not like they just said, you know, give us a million dollars and nothing. You knew a lot of stuff here. So that's what you were sort of jumping over that is what you knew. And you can have an opinion that what you knew was not enough to make that determination, but I'm having a hard time getting there on that one. Well, Judge, there are cases that I mentioned this to Judge Gergel at the I can't remember which case it was, but there was one where someone got airlifted out of an accident scene and they walked away from the hospital the very next day. Okay. Somebody can go to a hospital and they can end up staying in there because they had contracted COVID before the accident happened and they had to be treated for COVID for too much. I mean, we don't know until we get the corroborating information and you can't set a rule, Judge, in all the respect that says, well, you're going to have to just take the risk of a jury trial on that question each and every time, because that will engender and foster this exact type of cat and mouse game that the Noonan court and all these other courts that we actually was done. Once you did receive some material from the lawyer, you knew of the accident, you had an investigator who had gone to it. So I'm trying to determine in that 10 days, what did you do? And put it in the context of things that could have been done, but I also want you to view it not just in terms of the people who were injured, it's really the insured. He's over there shaking in his boots that you are not going to do anything with this case. And you, what did you do during those 10 days? I'm sure you must've run around trying to help him like crazy to find out if you had to pay it out. Tell me what did the insurance company actually do during those 10 days? Okay. Your honor, the insurance company immediately assigned an investigator. That investigator began the process gathering facts. The investigator and ultimately also within this time period of the time limited demand, a lawyer actually met with Mr. Wehmer and let's talk about the insured for a minute. The insured, Mr. Wehmer, who is described as a dropped out of 10th grade person, didn't have an ability to understand things by plaintiff's counsel in a deposition. This gentleman didn't think he was responsible for this accident. Okay. When he felt like this was really not his fault is the way he- That's not an issue in this case because you're very clear from the beginning who was responsible for this accident. He can think what he want to think. You knew that right from the beginning, you were going to have to pay some money. That's irrelevant whether he's got a 10th grade education or not. In fact, it weighs in his favor. It tells me you ought to have been really working to help him because this guy doesn't get it. He doesn't understand if this thing is over a billion dollars, all that's on him. That's where I see that going. Well, I understand that viewpoint, your honor, but it was made apparent in every single one of the activity reports of the page up. He was trying to get the official police report from day one about this. He never got it until February the 25th, well after this 10 day time limit demand expired. There was a question of comparative fault. This is a person who drove into the very rear end portion of the trailer and almost gotten across the intersection that had reflective light tape all over it. The Reynolds, Mr. Reynolds who drove into the back of that trailer as it was crossing the intersection, he had a clear line of sight. He was estimated to be going 60 miles an hour at the time of impact. The speed limit was 60 miles an hour. Mr. Tinsley testified in his deposition that Mr. Reynolds applied the brakes at the time of the accident. Are you saying that for the most part, your concern was more so about the issue of liability rather than damages? No, your honor. I want to be clear. You had an adjuster on this thing from the beginning. That adjuster looked like to me threw up his hand pretty quickly and said, whoa, we need to pay this. So, I mean, what did the adjuster do? I mean, you got an investigator. Well, I mean, I don't get it. I mean, if it's a question of liability, I'm not sure I'm seeing that in the record, but I'll go back and give you the benefit of doubt and really look at that issue because I thought it was more of a question of you didn't have enough information to assess the damages of it. Well, your honor, there were two issues going on. There's no question that primarily it was the medical records, but there was also a question of comparative fault on Mr. Reynolds or whether this accident was Mr. Reynolds' fault and not Mr. Wehmer. Mr. Wehmer felt like it really wasn't his fault. And so, you know, when we meet with our insurer, he's saying, I don't really think this is my fault. And we are trying to get the report. We are trying to get the medical records, ultimately, that Mr. Salibi is, that's the other thing that happened, Judge, is this thing got escalated up in the company who was an attorney at the insurance company. And he, in turn, on January the 10th, retained counsel. This was before any kind of lawsuit or anything else. So, they were treating this very seriously. They retained counsel. Ultimately, there was a meeting that one of the lawyers had with Mr. Wehmer about the accident scene. And they ultimately went about trying to get the medical records, as we've already been through. And in order to pay a million dollars, you should not have to, and you don't have to, a million dollars in damages. You just don't. You're allowed, as a matter of law, to get some substantiating information. And the plaintiff's lawyer is not allowed to alter your rights in your contract with your insurer by using this artifice, this 10-day limited demand technique. That is where, that is a very dangerous rule to allow this and to come up to your court quite often if this is allowed to get, well, the insurance company's got some information on this. Let's just make the short, I think as you said, Judge Wendt, 10-minute demand. You've got this information. Give me the money in 10 minutes. And it's a jury question about whether that's reasonable. That's what you're going to get. And the court's in the 11th Circuit, California, Florida, Kansas, Georgia, all of those cases have said, no, no, no. The insurance company, as a matter of law, has a right to get substantiating, corroborating records before they have to pay it out. And the Georgia court also, the Baker versus Huff case, which I would commend to the court, also, by coincidence, mentioned that there was a plaintiff expert in there who was saying, yeah, they had enough information to make the decision. And the court said, look, we're not going to allow a plaintiff expert to create a jury question on this. You're allowed to get substantiating, corroborating information before you have to pay it out. And that's a very important point in this case. No one is arguing that once the insurance company got the information, okay, in early April, that they did anything deleterious. In fact, the judge found that they acted in warp speed fashion on the review of those materials and offering them a million dollars. I think it was 25 days. Counsel, this is Judge Harris. I was The district court did at least talk about that. And can we look at what happened after the settlement was refused and considering whether the refusal itself was reasonable? That's okay. Well, what I think I'm doing there, Your Honor, is I'm just pointing out that, and it goes to the totality question as well. I'm just pointing out that no one is saying that once the insurance company received the totality information that they didn't act promptly, okay? That is not in dispute. No one is arguing that. So I agree with you that when you assess the January offer, what time and did anything occur that is their fault that deprived them of a reasonable basis for not paying a million dollars? The answer is no. As you already pointed out, Judge Harris, there was no causative action by anybody associated with Columbia Insurance Company that prevented them from getting the records in time to meet this time limit of demand. This was an artificial demand. Judge King said this. He's correct. And I want to make this point, Your Honor, if I could, in the limited time I have. The whole reason that the plaintiff's lawyer argues that he needed this time limit demand is because he didn't want to get this medical lien letter in his file, okay? But the reason he got a medical lien letter in his file is because he asked for the records on December the 30th. So he started this clock running back way back on December the 30th, and if anybody's going to be blamed for him getting a medical lien letter, it's him. He's the one that asked for the records first. He only asked for partial records, but he nevertheless asked for those, and he set that clock in motion for himself. Then he decided on his own arbitrarily to put 10 days in there. His secretary came in and gave him a draft letter that had 20 days. He scrapped through it and wrote 10 days, and this is all a claimant trying to impact the rights of the insurance company, and it's insured in an improper manner, and the same is true with the May offer. They cannot make the insurance company do things that are not within its insurance policy rights through the settlement offer mechanisms. That's just not appropriate. I'm out of time. I'll answer any further questions, but the district judge should be affirmed with all due respect. Thank you. Thank you very much, Mr. Brown. Ms. Barnes? The first point that I would like to make in reply is to respond to this repeated statement that Mr. Brown made that they have a right as a matter of law to get substantiating information, and I think as Judge Wynn pointed out, there is no South Carolina case that says that whatsoever, and I think the two cases that we cited in our brief actually say the opposite. The Varnador versus nationwide mutual insurance case and Howard versus State Farm, the one from South Carolina, not from the district court, both of those basically say that the insured is not bound to the insurance company's investigation. Varnador went so far as to say, you know, you can't bind the insured to that investigation. You'd be insulating an insurer from liability and foreclosing jury consideration of an insured's evidence of bad faith. So, I just want to go ahead and dispel that notion that that exists as a matter of law in South Carolina because the law is actually to the contrary. As to this discussion that there was some discussion about liability and, you know, comparative fault, that was not a basis for their rejection, as I think Judge Wynn pointed out. They knew by January the 16th, Mr. Ray reported to Columbia Insurance Company that he had talked to the officer, that the officer said Mr. Wehmer was clearly at fault. He violated a statute which implicated punitive damages at that point and recommended that they pay the property damage, and Mr. Fay, the appellant's expert, said once he recommended property damage, that's the same thing as saying our insured is liable here, and Columbia Insurance Company, in violation of industry standards and a South Carolina statute, said we're not going to pay the property damage claim because we think we're going to need to save all the money we can for the bodily injury limits there. Well, there's a whole lot of difference between that property damage claim and what ultimately the million dollars, but now are you, insofar as the rejection by the insurance company, are you speaking to the first offer as well as the second one, or did they in fact reject the first one, and I'm just slipping on my mind right now because we've got a number of cases coming together, but refresh my recollection. Did they reject the first one, or did they just let the 10 days expire? They let the 10 days expire, so the only communication that happened after the offer was made was that the lawyer for Mr. Wehmer made contact and said, we don't have the MUSC medical records. We need those to evaluate the claims, and they were sent medical authorizations that day, and then there was no further communication. They didn't ask for an extension of it. Let me ask you, because we're dealing with South Carolina law, and there's a lot of prediction as to what South Carolina would do. I mean, there's always the issue of whether or not we need to certify some of this to the South Carolina Supreme Court, but I'm not going there, but I'm curious as to your position, and you did mention it, that if they are presented with an offer with a 10-day period, is there some, most people, if they feel like they are kind of in a situation, they would at least make some overtures and says, can you extend the 10 days? Lawyers do it all the time. Was any of that done here? No, your honor, it was not done, and I will say, actually, we contend that it was 14 days, not 10, but no, they never asked for an extension in this case. Let's assume it's not much different between 14 and 10, so we won't get hung up on that one, but I'm more curious in terms of whether there's any case law or anything from South Carolina specifically that address that concern that when you are, because it, you know, outside of the fact that, you know, perhaps the insured did have a 10th grade education, which again, from my perspective, kind of makes it more of an uneven situation from my perspective with the insurer, sure, the person who's actually insuring them, you know, it just seems to me if you know this person is about to face some greater degree of liability and you know you're coming up on a 10 days and you haven't had a chance to investigate, I mean, it just seems reasonable you'd reach out to the lawyer and says, look here, I can't get this thing together within 10 days, can you give me another week or a couple weeks or something to work with it? And we need something here to just do it. We want to work with you. Any of that done here? No, your honor, that was not done here, and as I pointed out, I think initially. But is any of it required? Now, I don't want to just cabin that as to say that's bad, but does the South Carolina law point it in the direction that something like that would be a basis for saying you did not engage in this transaction with good people, or you did so in bad faith? Is there any case that would point on to give us some guidance of what South Carolina would say on that? I know my time has expired if I may answer your question. You go ahead and answer Judge Wynn's questions. Yeah, just give it a case. If you don't have a case, just say I don't know of one. I don't know of one that's directly on point with those facts, but my response would be that they have a duty to do what's in the best interest of their insured and what's in the best interest of their insured is to have properly investigated this from the beginning and not to put their need to document their file above the duty that they owe to their insured, if that answers your question. Thank you. Thank you very much, Ms. Barnes. Thank you. We appreciate it. And we would come down and greet the lawyers if we were in Richmond, but we can't do it. So we'll just have to say thank you and wish you all the best. We'll take your matter on this case under advisement.
judges: Robert B. King, James A. Wynn Jr., Pamela A. Harris